**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| ROCHELLE TOMLIN, as PARENT and NATURAL GUARDIAN of M.B., a minor,<br><br>Plaintiff,<br><br>vs.<br><br>ROBLOX CORPORATION, EPIC GAMES, INC., MICROSOFT CORPORATION, and JOHN DOES 1-50,<br><br>Defendants. | Case No.: 2:25-cv-04301<br><br>Hon. Mia Roberts Perez |

**MEMORANDUM OF LAW OF PLAINTIFF ROCHELLE TOMLIN, AS PARENT AND NATURAL GUARDIAN OF M.B., A MINOR IN OPPOSITION TO DEFENDANT ROBLOX CORPORATION'S MOTION TO COMPEL ARBITRATION AND STAY PROCEEDINGS**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ....................1

II. FACTUAL BACKGROUND ....................3

III. APPLICABLE LAW ....................3

IV. LEGAL ARGUMENT ....................4

A. Defendant Cannot Identify, Let Alone Sufficiently Prove, Who Agreed to its Terms of Use ....................4

1. Pennsylvania's Uniform Electronic Transaction Act Requires Signature Attribution Before an Electronic Agreement Can Be Deemed Validly Formed ....................5

2. Defendant Has Failed to Provide Adequate Proof that M.B. or His Parents Agreed to its Terms of Use ....................7

3. Discovery Is Required to Ascertain the Defendant's Electronic Transaction and Signature Verification Processes and Procedures ....................9

B. Even if M.B. Did Agree to Defendant's Terms of Use, M.B. Cannot Be Bound by the Arbitration Agreement as a Matter of Pennsylvania Law....................10

C. Likewise, Even if Defendant Could Prove that M.B.'s Parents Agreed to its Terms of Use on M.B.'s Behalf, M.B. Cannot Be Bound by the Arbitration Agreement as a Non-Signatory under Pennsylvania Law ....................12

1. The Supreme Court's Ruling in *Santiago* Dictates that Parents Cannot Bind Their Minor Children to Contracts, Including Arbitration Agreements ....................12

2. *Santiago* Is Not Rooted in Pennsylvania's Procedural Rules, As Defendant Suggests ....................13

3. *Santiago* Does Not Violate the Federal Arbitration Act, As Defendant Suggests ....................14

D. M.B. Also Explicitly Disaffirmed any Agreement with Defendant Consistent with Pennsylvania Law and Therefore is Not Bound by Any Terms as a Signor or Non-Signatory....................16

1. M.B.'s Disaffirmance is Properly Before this Court and Not an Issue That Should be Delegated to an Arbitrator ....................16

2. M.B. Properly Disaffirmed Any Agreement He May Have Had with Defendant under Pennsylvania Law by Filing the Complaint ...................16

E. The Doctrine of Equitable Estoppel Cannot Bind M.B. to Defendant's Terms of Use, Nor Does it Defeat His Disaffirmance under Pennsylvania Law ..................17

1. M.B. Cannot be Bound to the Terms of Use by Equitable Estoppel Because the Terms Were Unenforceable ..................................................17

2. Similarly, Pennsylvania Law Dictates that Where a Minor Obtains the Full Value of An Agreement, They Are Still Entitled to Disaffirm..................18

3. Defendant has Failed to Identify a Detrimental Change to its Business by M.B. Continuing to Play its Video Game Product, Especially Where Defendant Has Not Taken Any Action to Suspend Access to the Account ..........................................................................................................19

F. The Terms of Use Are Also Unconscionable and Therefore M.B. Cannot be Bound by Them .........................................................................................................20

G. A Stay Pending Arbitration is Unnecessary Because the Court Should Deny Compelling M.B.'s Claims to Arbitration in the First Instance.............................20

V. CONCLUSION.........................................................................................................20

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Apicella v. Valley Forge Military Academy*,
630 F. Supp. 20 (E.D. Pa. 1985) ....................13, 14, 15, 18

*Blair v. Scott Specialty Gases*,
283 F.3d 595 (3d Cir. 2002)....................4

*Central Bucks Aero, Inc. v. Smith*,
310 A.2d 283 (Pa. Super. 1973)....................3, 19

*Century Indem. Co. v. Certain Underwriters at Lloyd's London*,
584 F.3d 513 (3d Cir. 2009)....................4

*Doe v. Mercy Health Corp. of Southeastern Pennsylvania*,
150 F.R.D. 83 (E.D. Pa. 1993)....................10, 20

*Ecore International, Inc. v. Downey*,
343 F. Supp. 3d 459 (E.D. Pa. 2018)....................13

*Haines v. Fitzgerald*,
165 A. 52 (Pa. Super. 1933)....................16, 17

*John Doe v. Roblox Corp., et al.*,
No. 25-CIV-01193 (Cal. Super. Ct. Aug. 15, 2025)....................6

*Kirleis v. Dickie, McCamey & Chilcote, P.C.*,
560 F.3d 156 (3d Cir. 2009)....................4

*Morgan v. Sundance, Inc.*,
596 U.S. 411 (2022)....................4

*Murphy v. Roblox Corp.*,
No. 23-cv-1940 TWR (BLM), 2025 U.S. Dist. LEXIS 157572 (S.D. Cal. July 9, 2025)....................6

*Novelty Knitting Mills, Inc. v. Siskind*,
457 A.2d 502 (Pa. 1983)....................17

*In re O'Leary's Est.*,
352 Pa. 254, 42 A.2d 624 (1945)....................10, 11

*Pankas v. Bell*,
198 A.2d 312 (Pa. 1964)....................2, 11

*Commonwealth ex. Rel. Rothman v. Rothman*,
223 A.2d 919 (Pa. Super. 1966)....13

*Santiago v. Philly Trampoline Park, LLC*,
291 A.3d 1213 (Pa. Super. 2023).... *passim*

*Santiago v. Philly Trampoline Park, LLC*,
343 A.3d 995 (Pa. 2025)....2, 11, 12

*Simmons v. Parkette Nat'l Gymnastic Training Center*,
670 F. Supp. 140 (E.D. Pa. 1987).... *passim*

*Singh v. Uber Technologies Inc.*,
939 F.3d 210 (3d Cir. 2019)....16

*Trippe Mfg. Co. v. Niles Audio Corp.*,
401 F.3d 529 (3d. Cir. 2005)....4, 16

*Troshak v. Terminix Intern. Co., L.P.*,
1998 WL 401693 (E.D. Pa. July 2, 1998)....15

*Viso v. Werner*,
369 A.2d 1185 (Pa. 1977)....6

**Statutes**

73 P.S. § 2260....5

73 P.S. § 2260.103....5

73 P.S. § 2260.305....6

23 Pa.C.S. § 5101(a)....10

**Other Authorities**

*Restatement (Second) of Contracts*....11

# I. INTRODUCTION

Defendant has designed, manufactured and marketed a video game product that has encouraged, induced and resulted in catastrophic effects on minor children like M.B. The addictive elements of Defendant's game are so powerful that M.B. has been consumed to the point where it is impacting every aspect of his life. Now, Defendant attempts to bind M.B. to a complex contract that it has no idea, let alone proof, M.B., his parents or anyone else reviewed or agreed to. A contract that M.B. certainly had no way of understanding as a minor child. In making this argument, Defendant alleges that various actions such as account creation, pop-up notifications, Robux purchases and gift card redemptions bind M.B. to this contract in its entirety and specifically its arbitration provision. However, Defendant's arguments fail factually and legally under Pennsylvania law.

As a threshold matter, Defendant cannot prove what specific person it allegedly contracted with. The declaration of Ronita Jit ("Jit Declaration") makes this shortcoming abundantly clear, as she cannot attribute any allegedly binding action to M.B., his parents or any other specific individual. Instead of attributing contract acceptance to any particular person, Ms. Jit is careful to speak in generalities only about M.B.'s "account." This lack of attribution to an individual person is a direct result of Defendant having no mechanism in place to confirm the person behind an account. Defendant's ignorance of this critical element of contract formation is willful and intentional, because including such mechanisms would create friction at sign-up and during gameplay, causing users to avoid using its product. It is also reckless and egregious, given that Defendant has painstakingly studied and researched its user base, which is almost exclusively comprised of minor children. As Defendant cannot directly link M.B. or his parents to any particular action that Defendant alleges binds M.B. to arbitrate his claims, Defendant has failed to prove a valid contract ever existed in the first instance, which is a prerequisite to its Motion.

Secondly, as a minor child, M.B., cannot be bound by the arbitration clause contained in Defendant's Terms of Use under any circumstances as a matter of Pennsylvania law. Pennsylvania courts have historically been ultraprotective of children in the context of contract creation and enforcement. Courts have consistently held that "**minors lack the capacity to agree to an arbitration agreement or any other contract in their own right**." *Santiago v. Philly Trampoline Park, LLC*, 291 A.3d 1213 (Pa. Super. 2023) (emphasis added). This general policy is to protect minors "against their own lack of discretion and against the snares of designing persons." *Pankas v. Bell*, 198 A.2d 312, 315 (Pa. 1964) (citing *O'Leary's Estate*, 42 A.2d 624, 625 (Pa. 1945)). As M.B. is a minor, M.B. cannot be bound to a complex arbitration agreement under Pennsylvania law, regardless of whether he allegedly agreed to Defendant's Terms of Use.

Thirdly, M.B. cannot be bound by his parents' agreement, if any, to arbitration as a non-signatory. *Santiago v. Philly Trampoline Park, LLC*, 343 A.3d 995 (Pa. 2025) is binding Pennsylvania precedent and precludes a parent from binding a minor child to arbitration or, for that matter, any contract provision, without adequate court supervision and approval. Simply put, regardless of any action M.B.'s parents may have taken, they could not bind M.B. to arbitration as a matter of law.

Fourthly, even if this Court finds a valid contract was formed, and that arbitration can be applied to M.B. as a minor child, M.B. expressly disaffirmed any agreement with the filing of the Complaint as permitted under Pennsylvania law. By disaffirming any agreement M.B. may have had with Defendant, he is no longer bound by any of the Defendant's Terms of Use, including any purported requirement to arbitrate his claims. What is more, Pennsylvania law is clear that the doctrine of equitable estoppel does not bind minors to a contract, including arbitration, even in

instances where full performance of the contract was realized. *See Central Bucks Aero, Inc. v. Smith*, 310 A.2d 283 (Pa. Super. 1973).

For these reasons, and the reasons set forth more fully below, Defendant's Motion should be denied in its entirety.

## II. FACTUAL BACKGROUND

M.B. is a 12-year-old minor child with their entire life ahead of them. *See* Compl. ¶ 13 (ECF 1). Due to Defendant's intentionally aggressive and ubiquitous marketing, M.B. became interested in Defendant's game and began playing, just as millions of other children across the United States. *See Id*. at ¶ 14. Very quickly, M.B.'s life would be changed forever as his gameplay became all-consuming. *See Id*. M.B.'s parents failed to recognize what was wrong initially, assuming it was just their young child finding himself. However, M.B.'s outbursts became worse, and it seemed M.B.'s entire life was crumbling. *See Id*. M.B.'s parents soon realized that the only time that M.B. was tranquil and truly content was when he was playing Defendant's video games. M.B.'s parents attempted to wean M.B. off of the Defendant's games, but M.B.'s withdrawal symptoms were unbearable. *See Id*. at ¶ 226. M.B. simply could not function if M.B. were not playing video games. *Id.*

Now, Defendant attempts to avoid having this court decide its liability to M.B. by compelling arbitration. But the Terms of Use that Defendant alleges bind M.B. to arbitrate their claims are incredibly complex, and the linguistic demands alone exceed the working memory and comprehension of a 12-year-old. *See* Declaration of Dr. Dennis McBride ("McBride Decl."), ¶ 21, 23, attached as **Exhibit A**. Under no circumstances would a 12-year-old child, who is still learning to read and write, be able to understand even a sentence in this document. *Id*.

## III. APPLICABLE LAW

Although arbitration is generally favored, the presumption in support of arbitration "does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 160 (3d Cir. 2009). In fact, "arbitration agreements are as enforceable as other contracts, but not more so." *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (citing *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404, n. 12 (1967)). Accordingly, "a court must hold a party to its arbitration contract just as the court would to any other kind. But a court may not devise novel rules to favor arbitration over litigation." *Morgan*, 596 U.S. at 418 (citing *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218-221 (1985)). Before compelling arbitration, a court must first determine whether: (1) a valid agreement to arbitrate exists; and (2) the dispute falls within the scope of that agreement. *Trippe Mfg. Co. v. Niles Audio Corp.*, 401 F.3d 529, 532 (3d. Cir. 2005). Certainly, "a party cannot be compelled to submit a dispute to arbitration unless it has agreed to do so." *Century Indem. Co. v. Certain Underwriters at Lloyd's London*, 584 F.3d 513, 524 (3d Cir. 2009).

In evaluating an arbitration motion, courts apply a summary judgment standard and only compel arbitration where "there is no genuine issue of fact concerning the formation of the agreement" to arbitrate. *Kirleis*, 560 F.3d at 159. In making this determination, the party opposing arbitration is entitled to "the benefit of all reasonable doubts and inferences that may arise" relating to contract formation. *Id*. Under applicable Pennsylvania law, a contract is validly formed where the proponent shows by competent evidence: (1) there is mutual manifestation to be bound by the agreement; (2) the terms are sufficiently defined; and (3) consideration. *Blair v. Scott Specialty Gases*, 283 F.3d 595, 603 (3d Cir. 2002).

## IV. LEGAL ARGUMENT

### A. Defendant Cannot Identify, Let Alone Sufficiently Prove, Who Agreed to its Terms of Use.

Defendant has failed to provide **any** adequate evidence that M.B., his parents, or any other specific person, for that matter, agreed to its Terms of Use. This is readily apparent from the Jit Declaration, which fails to attribute **any** actions directly to a particular person, much less M.B. or his parents. Instead, Jit speaks generally, but deliberately, only about "a Roblox account belonging to Plaintiff," taking certain actions which Defendant alleges must bind M.B. to arbitration. *See* Declaration of Keneth J. Moyle, Jr. ("Moyle Decl.") ¶ 19, attached as **Exhibit B**. Despite assuming this critical fact to make out a claim for arbitration, at no point in Jit's Declaration does she identify how the Defendant identifies or verifies the individual to whom the Terms of Use are presented and accepts the same. *Id*. ¶¶ 22-24, 30-31. In fact, to identify the accepting counterparty, Defendant would have needed mechanisms in place for identity verification at the time it alleges M.B. or his parents supposedly assented to its Terms of Use. *Id*. ¶¶ 22-24. Yet, Defendant completely fails to identify any such mechanism in its brief or supporting declaration, thus reflecting that the opposite is true – sufficient information, documentation or evidence identifying and verifying the supposed counterparty to the Terms of Use simply does not exist in a manner that would allow this Court to find a valid contract exists.

### 1. Pennsylvania's Uniform Electronic Transaction Act Requires Signature Attribution Before an Electronic Agreement Can Be Deemed Validly Formed.

Pennsylvania adopted the Uniform Electronic Transactions Act ("UETA") with the passage of 73 P.S. § 2260. Under 73 P.S. § 2260.103, Pennsylvania identifies an electronic contract ("e-contract") as any "record created, generated, sent, communicated or received by stored electronic means." The statute further states an electronic signature encompasses "an electronic sound, symbol, or process attached to or logically associated with a record and executed or adopted by a person with the intent to sign the record." *Id*. "An electronic record or signature is attributable to a person **if it was the act of <u>that person</u>**. The act of the person may be shown in any manner,

including a showing of efficacy of any security procedures applied to determine the person to which the electronic record or electronic signature was attributable." 73 P.S. § 2260.305 (emphasis added). "**In the context of an anonymous 'click-through' [process], issues of proof will be paramount**." *Id*. at cmmt. 5 (emphasis added).

Authenticating an e-signature as a pre-requisite to the formation and enforcement of an electronic agreement is not a novel legal concept; it is the logical application of the longstanding requirement that a party actually consent to a contract before it is bound by it. As such, the party relying on a contract has the burden of proving a signature's validity. *Viso v. Werner*, 369 A.2d 1185, 1187 (Pa. 1977). This is of utmost importance when considering e-contracts because there is no handwriting to help authenticate the signature of the person who allegedly entered into the agreement.

Moreover, courts in other jurisdictions facing nearly identical circumstances have denied motions to compel arbitration where corporate entities, including this very Defendant, fail to provide evidence of contract formation when a click-through process is at issue. *See* Minute Order on Motion to Compel Arbitration, *John Doe v. Roblox Corp., et al.*, No. 25-CIV-01193, at *4 (Cal. Super. Ct. Aug. 15, 2025), attached as **Exhibit C** ("If Discord wants to use this "click through" format without any additional verification related to exactly who is controlling the process on the customer's end, then they do so at their own peril.")[1]; *Murphy v. Roblox Corp.*, No. 23-cv-1940

[1] "Discord has not shown with sufficient specificity exactly who agreed with Discord's Terms and how. The parties seem to (at least tacitly) agree that a Discord account was formed in 2023, by virtue of <u>someone</u> clicking through Discord's online Terms to open the account. But that is where the parties diverge, and the evidence Discord offers relating to the account in question is minimal to none. **The burden is on Discord to establish exactly who its contract is with if Discord wishes to enforce the arbitration provision therein. Discord has not met that burden at this point in time, and by failing to do so, there is no basis upon which to grant the motion at this time.**" **Exhibit C** at *3-4 (emphasis added).

TWR (BLM), 2025 U.S. Dist. LEXIS 157572, *14 (S.D. Cal. July 9, 2025), attached as **Exhibit D** ("Because [Roblox] fails to establish by a preponderance of the evidence that Plaintiff assented to its arbitration provision, the Court [denies] Defendant's Motion")[2]. Very simply, courts require a corporate entity to actually prove who clicked the button agreeing to a contract or terms of use before enforcing arbitration.

**2. Defendant Has Failed to Provide Adequate Proof that M.B. or His Parents Agreed to its Terms of Use.**

Defendant asserts that either M.B. or their parent(s) agreed to arbitrate claims against Defendant but fails to provide any evidence in support. Moyle Decl. ¶¶ 30-31. Specifically, Defendant alleges M.B. is bound to arbitration because **either** M.B. or their parents "must have" assented to its Terms of Use: (1) during account creation; (2) during usage of the platform where "pop-ups" were presented; (3) by redeeming Roblox gift cards; and (4) by purchasing "Robux" on the platform. However, as is plain on the face of the Jit Declaration, Defendant does not know who specifically performed any of these actions, such that a contract was validly formed. *Id.* ¶¶ 16-18, 22-24.

First, the carefully selected language used throughout the Jit Declaration indicates that Defendant cannot link M.B., or his parents, to the actions it alleges bind M.B. to arbitration. Specifically, the Jit Declaration uses the phrase "the Account" rather than identifying M.B. or his parent specifically when referring to each and every action Defendant alleges binds M.B. to arbitration. *Id.* ¶ 19. Thus, Ms. Jit cannot, and does not, state anywhere in the Declaration, under penalty of perjury, that M.B. or his parents were the actual persons who took the actions Defendant alleges bind M.B. to arbitration. *Id.* ¶ 21. That is because Defendant would have had to verify the

[2] "While it is possible that Plaintiff created the account, it is equally possible that his child, the child's mother, another child, or some other person entirely created the account after obtaining Plaintiff's permission." **Exhibit D** at *14, n 5.

specific user or person responsible for each action allegedly demonstrating assent, but completely failed to do so.

Second, Ms. Jit goes on to describe the actions Defendant alleges bind M.B. to arbitration. She states that when someone creates an account, that unknown person must agree to Defendant's Terms of Use during the sign-up process. However, Ms. Jit fails to identify what specific personal identifying information Defendant collects during enrollment in order to bind that particular person to the Terms of Use. *Id.* ¶¶ 16-18. In other words, Defendant never bothers to determine who the enrolling party is, much less verify whether that person is who they claim to be or has capacity to bind a non-signatory. Of particular importance when dealing with children, it is also apparent from Ms. Jit's declaration that Defendant fails to confirm whether this unknown person is someone over the age of 18 with legal capacity to contract. Even more glaringly, Ms. Jit does nothing to even demonstrate exactly how the Terms of Use would have been presented to this unknown person at the time the account M.B. used was first created. All told, Defendant completely fails to establish who it supposedly contracted with, the legal relationship that unknown person may or may not have had with M.B. and the process whereby the Terms of Use were adopted such that this Court has sufficient basis to find the threshold element of valid contract formation has been satisfied. *Id.* ¶¶ 30-31.

Beyond the initial creation of its alleged electronic contract, Ms. Jit also describes that Defendant periodically updates its Terms of Use and notifies "the Account" of updates by "pop-up" notices during gameplay when its Terms of Use are changed. Defendant alleges that these "pop-ups" would have been displayed to "the Account" during gameplay, but again, Defendant fails to identify how it documents and verifies the actual person who is using the account at the time a "pop-up" notice appears. *Id.* ¶¶ 22-24. Instead, the Jit Declaration demonstrates only that

Defendant blindly transmits the "pop-up" without any regard for who is on the receiving end, much less whether they are anyone with an adequate legal basis to bind M.B. Indeed, Ms. Jit states that these "pop-up" updates are also sent to a messaging platform on Roblox with no indication whatsoever that Defendant verifies who has received, read and adopted these critical messages. *Id*. It is simply inconceivable that such a haphazard process can function to strip M.B. of his constitutionally protected right of access to the courts when Defendant has absolutely no idea or proof of who allegedly accepted these "pop-up" messages in a way that supports a validly formed agreement to arbitrate.

Most speculatively, the Jit Declaration states that a valid contract to arbitrate exists because M.B.'s account purchased the in-game currency Robux and redeemed Roblox gift cards; actions which Defendant alleges bind M.B. to its Terms of Use. Specifically, Ms. Jit again states that "**the Account**" made 9 purchases of Robux between April 11, 2022, and July 19, 2025. But as evidenced by Ms. Jit stating only that "Roblox records show nine purchases of Robux on **the Account**…", rather than by any specific user or person, Defendant tacitly admits it cannot affirmatively demonstrate who made the purchases and whether they are able to bind M.B. to arbitration. *Id*. ¶¶ 22-24. The same holds true where Ms. Jit states only that "**the Account** redeemed Roblox Gift Cards on twenty-one (21) occasions between June 27, 2020 and October 29, 2025," without attributing this action to the particular person who may have actually redeemed those gift cards. Yet again, despite the chain of assumptions and suppositions that underscore its Motion, Defendant does not offer a single shred of sufficient evidence that the individual they contracted with is M.B., his parents or anyone else with the legal capacity to consent that the claims in the Complaint should be sent to arbitration. *Id*. ¶¶ 30-31.

**3. Discovery Is Required to Ascertain the Defendant's Electronic Transaction and Signature Verification Processes and Procedures.**

Defendant's complete failure to submit sufficient evidence demonstrating a validly formed contract is reason alone to deny the Motion in its entirety. *See* **Exhibits C** and **D**. Even still, if the Court is inclined to consider arbitration, Defendant's inability to state or prove who took the actions that supposedly bind M.B. to arbitration warrants meaningful discovery on these issues, especially as it relates to the full extent of Defendant's electronic transaction verification processes and procedures. *See Doe v. Mercy Health Corp. of Southeastern Pennsylvania*, 150 F.R.D. 83 (E.D. Pa. 1993) (Court may permit additional discovery where a party demonstrates additional discovery will enable him to rebut the motion). As demonstrated by the foregoing discussion and comparative dearth of such information in Ms. Jit's declaration, this evidence is crucial to evaluating the electronic transactions at issue to determine whether the threshold element of a validly formed contract to arbitrate ever existed. Moyle Decl. ¶ 24.

**B. <u>Even if M.B. Did Agree to Defendant's Terms of Use, M.B. Cannot Be Bound by the Arbitration Agreement as a Matter of Pennsylvania Law.</u>**

Under Pennsylvania law, M.B., as a minor, cannot be bound by an arbitration agreement – or, for that matter, any contract – he purportedly agreed to absent court supervision and approval. Unable to escape this axiom of Pennsylvania law, Defendant fails to cite **a single** Pennsylvania case where a minor personally bound themselves to arbitration and the contract was enforced. This is because, according to Pennsylvania law, "**minors lack the capacity to agree to an arbitration agreement <u>or any other contract</u> in their own right**." *Santiago*, 291 A.3d at 1213 (emphasis added); *see also* 23 Pa.C.S. § 5101(a) (Only individuals 18 years of age or older have the right to enter into a binding and legally enforceable contract). Pennsylvania follows the *Restatement (Second) of Contracts*, which holds that minors, with certain exceptions, are not competent to enter into a "valid" contract. *See Simmons v. Parkette Nat'l Gymnastic Training Center*, 670 F. Supp. 140, 142 (E.D. Pa. 1987) (citing *Restatement (Second) of Contracts* § 12 (1981)); *In re O'Leary's*

*Est.*, 352 Pa. 254, 42 A.2d 624, 625 (1945) (holding that minors are incompetent to contract except for necessities such as food and clothing). Thus, where a minor executes any contract, including a contract to arbitrate, the agreement is simply not valid. *Simmons*, 670 F. Supp. at 142; *see also Restatement (Second) of Contracts* § 14 ("Unless a statute provides otherwise, a natural person has the capacity to incur only voidable contractual duties until the beginning of the day before the person's eighteenth birthday.").

The reason that minors do not have the general ability to contract in Pennsylvania is to protect them "against their own lack of discretion and against the snares of designing persons." *Pankas*, 198 A.2d at 315 (citing *O'Leary's Estate*, 42 A.2d at 625). "All lawyers know that the protection of infants is one of the chief concerns of the law." *O'Leary's Estate*, 42 A.2d at 625. This sentiment is consistent with the recent ruling in *Santiago v. Philly Trampoline Park, LLC*, 343 A.3d 995, 1012 (Pa. 2025), where the Supreme Court of Pennsylvania unequivocally held that "arbitration lacks the carefully constructed network of protections for the interests of minors" generally required by Pennsylvania law because "there would be no appointment of a guardian or judicial oversight to guarantee pursuit of their best interests." *Id*. As explained by the Supreme Court, "[r]emoval of these safeguards fundamentally changes the minors' rights in their causes of action and thwarts their protection." *Id*. at 1014. A minor cannot advance a cause of action on their own and a court "at all times has the obligation to monitor the conduct of the litigation to protect the child's best interests." *Id*. The court cannot do this if a claim is in arbitration. *Id*.

Here, Defendant manufactured, designed and marketed a video game product that is intended to addict young children. Now, after knowingly addicting him to the game, Defendant alleges several actions M.B. (or someone else) may have taken bind him to arbitration. Under Pennsylvania law, even if M.B. did take these actions, M.B. lacks the capacity to enter into any

valid agreement with the Defendants, much less an arbitration agreement. In fact, Defendant's Terms of Use are precisely the type of situation that Pennsylvania has vigilantly tried to guard against by protecting minors from the "snares of designing persons" by requiring virtually all contracts involving minors to follow a court-approved and supervised process. As a result, even if Defendant could prove (which it cannot) that M.B. did personally take the actions of assent Defendant describes, he still cannot be bound to arbitration under fundamental Pennsylvania law applicable to all contracts involving minors, including arbitration.

### C. Likewise, Even if Defendant Could Prove that M.B.'s Parents Agreed to its Terms of Use on M.B.'s Behalf, M.B. Cannot Be Bound by the Arbitration Agreement as a Non-Signatory under Pennsylvania Law.

In its protection of minor children from unknowingly contracting away their legal rights, Pennsylvania law goes even further by holding that a minor like M.B. cannot even be bound by his parents' agreement to arbitrate his claims. *Santiago*, 343 A.3d at 1015. Knowing that it cannot cite any Pennsylvania law to support its ends, Defendant instead attempts only to explain away the recent Supreme Court decision in *Santiago* as somehow nonbinding on this Court sitting in diversity. However, *Santiago* is unquestionably binding Pennsylvania precedent that this Court should apply to deny the Motion in its entirety.

#### 1. The Supreme Court's Ruling in *Santiago* Dictates that Parents Cannot Bind Their Minor Children to Contracts, Including Arbitration Agreements.

Decided only a few months ago, *Santiago* is now the seminal Pennsylvania Supreme Court case on the issue of whether a parent can bind a minor child to a contract, including one that features an arbitration clause. In *Santiago*, the Court addressed specifically whether an arbitration agreement signed by a parent on a child's behalf is enforceable against the non-signing minor. The Supreme Court held that a parent cannot bind their child to arbitration in such circumstances. *Id*. at 1015. Here, Defendant alleges that M.B.'s parent may (or may not) have taken actions on M.B.'s

behalf that bind M.B. to arbitration, but Pennsylvania law is clear that M.B.'s parents were legally incapable of doing so under general contracting principles. Consequently, even if M.B.'s parents performed all the actions Defendants allege without sufficient evidence, they still cannot bind M.B. to arbitration as a matter of law.[3]

**2. *Santiago* Is Not Rooted in Pennsylvania's Procedural Rules, As Defendant Suggests.**

Defendant is vastly mistaken in its assertion that *Santiago* is "rooted in a series of [Pennsylvania state] rules of procedure."[4] To the contrary, *Santiago* is premised on long-standing precedent in Pennsylvania that parents do not have the substantive legal authority to contract away **any** of their minor child's legal rights. *Apicella v. Valley Forge Military Academy*, 630 F. Supp. 20 (E.D. Pa. 1985) (minor was not bound by an exculpatory release executed by the minor and her parents); *Simmons by Grinnel v. Parkette Nat'l Gymnastic Training Ctr.*, 670 F. Supp. 140 (E.D. Pa. 1987) (minor's parents could not release a defendant from potential claims that eventually accrued to a minor); *Commonwealth ex. Rel. Rothman v. Rothman*, 223 A.2d 919, 922 (Pa. Super. 1966) ("[W]e have often recognized that parents cannot bargain away the rights of minor children."). This is consistent with Pennsylvania law that minors do not have the capacity to contract, because ultimately, they would not even understand the rights their parents may be contracting away.

[3] Defendant's citation to distinguishable cases outside of Pennsylvania involving **adult** third-party beneficiaries of contracts accepted by other adults does nothing to change the fact that *Santiago* applies to the Terms of Use Defendants allege (without proof) they accepted on behalf of their minor child.

[4] Even under the Federal Arbitration Act ("FAA"), state substantive law governs issues of contract formation. *Ecore International, Inc. v. Downey*, 343 F. Supp. 3d 459, 487 (E.D. Pa. 2018) (Applying Pennsylvania law in evaluating the formation of a contract).

Here, Defendant alleges that M.B.'s parents may have contracted away their right to a jury trial and bound them to arbitration. Longstanding substantive law in Pennsylvania that long-predates *Santiago* renders M.B.'s parents incapable of doing so.

**3. *Santiago* Does Not Violate the Federal Arbitration Act, As Defendant Suggests**

Defendant contorts Pennsylvania law and federal precedent to argue that *Santiago* contravenes the FAA because it fails to "place arbitration agreements on an equal footing with other contracts." While it is certainly true that a state law of contract formation specifically formulated to undermine arbitration is preempted by the FAA, neither longstanding Pennsylvania law regarding the rights of children in **all** contracts nor the holding in *Santiago* were expressly designed to target **only** arbitration provisions as Defendant suggests. Rather, the Pennsylvania principle that neither a minor nor their parents can contract away **any** right without court supervision and approval is one of general applicability that applies in many circumstances other than arbitration.

To this end, courts in the Eastern District of Pennsylvania have already recognized the same rule of contract formation underpinning *Santiago* by deciding, time and again, that parents cannot prospectively waive a minor child's future claims. *See Apicella*, 630 F. Supp. 20; *Simmons by Grinnel*, 670 F. Supp. 140. In *Apicella*, the court ruled that "under Pennsylvania law, parents do not possess the authority to release the claims or potential claims of a minor child merely because of the parental relationship." *Apicella*, 630 F. Supp. at 23. This ruling was later adopted in *Simmons*, which held that a minor's parents could not release a defendant from potential claims that eventually accrued to a minor. *Simmons*, 670 F. Supp. at 143. While both *Apicella* and *Simmons* pre-date the *Santiago* decision, they recognize and invoke the same broad principles of

Pennsylvania contract law to hold that a child has a property right in their own claims that cannot be abrogated simply by agreement or action of their parents.

Notably, this general rule of contract formation is so ubiquitous under Pennsylvania law that the Eastern District of Pennsylvania in *Troshak v. Terminix Intern. Co., L.P.*, 1998 WL 401693 (E.D. Pa. July 2, 1998) predicted the same result as *Santiago* more than 25 years ago. In *Troshak*, the Defendant attempted to enforce an arbitration agreement against a non-signatory minor child. *Id*. at 4. The *Troshak* court noted it was not aware of any Pennsylvania court case that spoke directly to the issue, so it had to determine how the Pennsylvania Supreme Court would rule under generally applicable rules of contract formation. *Id*. (citing *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 661 (3d Cir. 1980)). In relying on *Apicella* and *Simmons*, the *Troshak* court held that "if a parent cannot prospectively release the potential claims of a minor child, then a parent does not have authority to bind a minor child to an arbitration provision that requires the minor to waive their right to have potential claims for personal injury filed in a court of law." *Id*. This is exactly the same reasoning and result reached in *Santiago*, dispelling any notion that *Santiago* was somehow conceived of as a targeted assault on arbitration that attempts to circumvent the FAA.

In point of fact, *Santiago* is a decision that is perfectly in line with decades of Pennsylvania precedent and public policy, which courts – including the Eastern District of Pennsylvania – have held is designed to protect children in the formation of all contracts, regardless of whether they include provisions relating to arbitration. Consistent with Pennsylvania precedent and prior rulings in the Eastern District of Pennsylvania, this Court should therefore follow *Santiago* and its predecessors to find that M.B.'s claims cannot be compelled to arbitration.

### D. M.B. Also Explicitly Disaffirmed any Agreement with Defendant Consistent with Pennsylvania Law and Therefore is Not Bound by Any Terms as a Signor or Non-Signatory.

#### 1. M.B.'s Disaffirmance is Properly Before this Court and Not an Issue That Should be Delegated to an Arbitrator.

Separate from the question of whether Defendant's Motion presents a validly formed contract that permits arbitration of minor claims under Pennsylvania law, this Court also has proper authority to evaluate M.B.'s disaffirmance of Defendant's Terms of Use because M.B. has challenged the validity of the entire Terms of Use, which necessarily includes the validity of the included delegation clause.

As a preliminary matter, where a delegation clause is included in a contract, courts cannot decide threshold questions of arbitrability "unless a party challenge[s] the delegation clause [specifically] and the court concludes that the delegation clause is not enforceable." *Singh v. Uber Technologies Inc.*, 939 F.3d 210, 215 (3d Cir. 2019) (citing *MacDonald v. CashCall, Inc.*, 883 F.3d 220, 226 (3d Cir. 2018). At the same time, however, courts have viewed delegation clauses as "merely a specialized type of arbitration agreement." *Singh*, 939 F.3d at 215 (citing Rent-*A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 72 (2010)). It therefore follows that if a plaintiff challenges the validity or existence of the alleged contract in its entirety, any clause within that contract delegating a dispute to an arbitrator would be little more than an end-run around the threshold requirement that the trial court decide whether a contract to arbitrate ever existed in the first instance. *Trippe Mfg. Co.*, 401 F.3d at 532 (a court must first determine whether a valid agreement to arbitrate exists before compelling arbitration).

#### 2. M.B. Properly Disaffirmed Any Agreement He May Have Had with Defendant under Pennsylvania Law by Filing the Complaint.

Under well settled Pennsylvania law, M.B. properly disaffirmed any agreement he may have had with Defendant by filing a Complaint. *See Haines v. Fitzgerald*, 165 A. 52, 55 (Pa. Super.

1933) (noting that filing a lawsuit constitutes disaffirmance). In fact, a minor child can disaffirm a contract even before they turn 18 simply by filing a complaint at law; no additional step or action is needed. *Id*. at 145, n. 1. Here, the filing of M.B.'s complaint was therefore proper disaffirmance under Pennsylvania law and as such, the effect of any agreement is no longer in force as it relates to M.B.

### E. The Doctrine of Equitable Estoppel Cannot Bind M.B. to Defendant's Terms of Use, Nor Does it Defeat His Disaffirmance under Pennsylvania Law.

Defendant's attempt to invoke the doctrine of equitable estoppel fares no better in overcoming the invalidity of the Terms of Use or M.B.'s clear disaffirmance by virtue of filing his Complaint. Broadly speaking, equitable estoppel consists of two elements: (1) inducement; and (2) justifiable reliance. *Novelty Knitting Mills, Inc. v. Siskind*, 457 A.2d 502, 503 (Pa. 1983). "The conduct that is induced may occur by commission or by forbearance, **provided that a detrimental change in condition results**." *Siskind*, 457 A.2d at 503-504 (emphasis added).

#### 1. M.B. Cannot be Bound to the Terms of Use by Equitable Estoppel Because the Terms Were Unenforceable.

Even if M.B. continues to play Defendant's video game product, equitable estoppel does not apply because M.B. was never bound by the agreement in the first place. As discussed *supra*, M.B. cannot be bound by the arbitration agreement as a signor or non-signatory given that he was a minor. Again, Defendant fails to cite **a single** case applying Pennsylvania law where a court bound a minor to arbitration under the equitable estoppel doctrine, because Pennsylvania law precludes it.

As expressed *supra*, M.B. could never bind himself to the Terms of Use, including arbitration, and neither could his parents. While equitable estoppel was not expressly discussed in *Santiago*, the decision is clear that applying equitable estoppel to nevertheless bind a minor to a contract they could never have agreed to without court oversight and approval would subvert well

settled Pennsylvania law and public policy. This conclusion is consistent with the decisions of other Pennsylvania courts that have implicitly rejected the application of equitable estoppel to contracts involving minors even where the minor realized the full benefit of the alleged bargain to the detriment of the party seeking enforcement of the contract. *See, e.g.*, *Simmons by Grenell*, 670 F. Supp. at 144; *Apicella*, 630 F. Supp. at 24. Simply put, according to longstanding Pennsylvania law applied in state and federal courts alike, a minor who obtains the full value of a contract is nevertheless not bound by an invalidly formed agreement.

**2. Similarly, Pennsylvania Law Dictates that Where a Minor Obtains the Full Value of An Agreement, They Are Still Entitled to Disaffirm.**

Pennsylvania courts have likewise held that even where a minor plaintiff receives the full value of their supposed agreements, they are nevertheless entitled to avoid performance of the contract by virtue of their immaturity. In *Simmons*, the court was faced with an exculpatory waiver which was executed prior to the minor child's participation in gymnastics. *Simmons by Grenell*, 670 F. Supp. at 141. The minor child was injured during her participation and then sued, while the organization argued she was precluded from doing so due to the exculpatory waiver. *Id.* The distinction made by the *Simmons* court was the "benefit" received which the court identified as the defendants' allowance of her to participate in the organization. *Id*. at 144. The court ruled this was not the type of "benefit" Pennsylvania courts had in mind in disallowing disaffirmance. *Id*. The Court noted that "the common law rule that minors, with certain exceptions, may disaffirm their contracts has its basis in the public policy concern that minors should not be bound by mistakes resulting from their immaturity or the overbearance of unscrupulous adults." *Id*. As the court did not oversee the execution of an exculpatory waiver, the minor could not be bound by it. *Id*.

Further, Pennsylvania courts have gone even so far to rule that parties do not have a right of recovery against minor children if damage is done to property after full performance under a

contract. In *Central Bucks Aero, Inc. v. Smith*, 310 A.2d 283 (Pa. Super. 1973), a lessor of an airplane brought an action against a minor to recover damage to an airplane that occurred during landing. After the accident, the minor disaffirmed the lease agreement, and the court barred recovery for damage to the plane. *Id*. at 442. According to the Court, the only right of recovery the party has against a minor is an action in replevin to recover the item itself. *Id*. This is reflective of the fact that, despite the plane being flown, landed and subsequently damaged, a minor's disaffirmance was still valid.

These decisions show that Pennsylvania law affords minors broad latitude when it comes to disaffirming a contract, and M.B. should be afforded that same latitude here, given his status as a minor.

**3. Defendant has Failed to Identify a Detrimental Change to its Business by M.B. Continuing to Play its Video Game Product, Especially Where Defendant Has Not Taken Any Action to Suspend Access to the Account.**

Defendant alleges that M.B.'s disaffirmance is ineffective because M.B. continues to play Defendant's video game product. This is undoubtedly a "benefit" received by M.B., but it is completely unclear how Defendant has relied to its detriment such that equitable estoppel should even be at issue. Defendant is a large corporation with millions of users around the world that cannot plausibly explain how M.B.'s continued gameplay has actually caused it an identifiable harm. Further if M.B.'s continued gameplay has, in fact, negatively impacted Defendant, it is curious that in the more than six months since the Complaint was first filed, Defendant has taken absolutely no action whatsoever to mitigate its circumstances by closing the account, limiting or restricting account access or even seeking to have the Terms of Use executed in a manner consistent with applicable Pennsylvania law. The reason for this inaction is simple – Defendant's claims of detrimental reliance and harm caused by M.B.'s continued gameplay are nothing more

than pretext for enforcing an arbitration agreement that it knows is invalid, improper and unenforceable under Pennsylvania law.

### F. The Terms of Use Are Also Unconscionable and Therefore M.B. Cannot be Bound by Them.

The purported presentation of the Terms of Use to M.B. and/or his parents (or someone else, for that matter), and the Terms of Use themselves, are also legally and factually unconscionable such that arbitration cannot be compelled. However, because of the way Defendant selectively presented only portions of the Terms of Use and enrollment process in its self-serving declarations, Plaintiff does not have adequate information or discovery to fully brief this argument on this record. McBride Decl. ¶ 13. As a result, if the Court is inclined to consider sending this matter to arbitration notwithstanding the foregoing arguments, discovery is necessary to fully consider the unconscionability of the Terms of Use. *Id*; *see also Doe*, 150 F.R.D. 83.

### G. A Stay Pending Arbitration is Unnecessary Because the Court Should Deny Compelling M.B.'s Claims to Arbitration in the First Instance.

As presented in Defendant's Motion, the requested stay of proceedings is warranted only if the Court first decides that M.B.'s claims should be compelled to arbitration. For the reasons set forth above, the Court should deny that request in its entirety as a matter of both fact and Pennsylvania law. Absent any independent basis for a stay of proceedings – which the Defendant does not appear to articulate in any way – the Court should decline to compel this matter to arbitration, and in turn deny any stay as moot.

## V. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that this Court deny Defendant's motion to compel arbitration and stay proceedings in its entirety.

Date: February 2, 2026

Respectfully submitted,
**GRANT & EISENHOFER P.A.**

*/s/ Adam J. Gomez*

Adam J. Gomez (PA Bar # 317145)
Tudor I. Farcas (PA Bar # 316541)
Garrett A. Gittler (PA Bar # 325915)
123 Justison Street, 6th Floor
Wilmington, DE 19801
Tel: 302-622-7000
agomez@gelaw.com
tfarcas@gelaw.com
ggittler@gelaw.com

*Attorneys for Plaintiff*