# EXHIBIT "D"

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

KATHERINE MURPHY, MONIQUE PAYAN, DAMIEN UHL, and those similarly situated,

Plaintiffs,

v.

ROBLOX CORPORATION, a Delaware corporation,

Defendant.

Case No.: 23-CV-1940 TWR (BLM)

**ORDER DENYING DEFENDANT ROBLOX CORPORATION'S RENEWED MOTION TO COMPEL PLAINTIFF DAMIEN UHL TO ARBITRATION**

(ECF No. 80)

Presently before the Court is Defendant Roblox Corporation's long-anticipated Renewed Motion to Compel Plaintiff Damien Uhl to Arbitration ("Mot.," ECF No. 80), as well as Plaintiff's Response in Opposition to ("Opp'n," ECF No. 84) and Defendant's Reply in Support of ("Reply," ECF No. 91) the Motion. The Court held a hearing on May 29, 2025. (*See* ECF No. 94.) Having carefully considered the Parties' arguments, the record, and the applicable law, the Court **DENIES** Defendant's Motion.

## BACKGROUND

### I. Procedural Background

Katherine Murphy and Monique Payan initiated this action in the Superior Court of the State of California, County of San Diego, on August 7, 2023, filing an initial Class

Action Complaint for Damages alleging seven causes of action for (1) intentional misrepresentation; (2) negligent misrepresentation; (3) unjust enrichment; (4) violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200–17210; (5) violations of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500–17606; (6) violations of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code §§ 1750–1784; and (7) violations of the consumer protection laws of California, Connecticut, Illinois, Maryland, and Missouri. (*See generally* ECF No. 1-4.) On October 2, 2023, Ms. Murphy, Ms. Payan, and Mr. Uhl filed a First Amended Class Action Complaint for Damages, alleging the same seven causes of action. (*See generally* ECF No. 1-2.)

On October 20, 2023, Defendant removed to this Court under the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, 1711–1715. (*See generally* ECF No. 1.) In response to the Court's October 31, 2023 Order (1) Granting Joint Motion Regarding Briefing Schedule for Defendant's Anticipated Motion to Dismiss; and (2) for Plaintiffs to Show Cause Why This Action Should Not Be Remanded to the Superior Court of California, County of San Diego, (*see* ECF No. 10), Plaintiffs filed the operative Second Amended Class Action Complaint alleging the same seven causes of action, (*see generally* ECF No. 14), and moved for this case to be remanded to state court. (*See generally* ECF No. 20.) On February 8, 2024, the Court denied Plaintiffs' motion to remand, (*see* ECF No. 31), and set a briefing schedule for Defendant's motion to dismiss. (*See* ECF No. 32.)

Defendant's motion to dismiss was comprehensive, seeking dismissal of each of Plaintiffs' causes of action on several grounds.[1] (*See generally* ECF No. 35.) After the

---

[1] Specifically, Defendant argued that (1) Plaintiffs' claims were barred by Section 230 of the Communications Decency Act, 47 U.S.C. § 230 ("Section 230"), (*see* ECF No. 35 at 11–15); (2) Plaintiffs' claims were barred by the First Amendment, (*see* Mot. at 15–16); (3) Plaintiffs' claims failed to comply with Rule 9(b), (*see* ECF No. 35 at 16–17); (4) Plaintiffs failed to allege actionable misrepresentations and omissions, (*see id.* at 17–23); (5) Plaintiffs failed to allege reasonable reliance, (*see id.* at 24–25); (6) Plaintiffs failed to allege intent to defraud or induce reliance, (*see id.* at 25); (7) Plaintiffs lacked standing to bring claims under the consumer protection laws of Connecticut, Illinois, Maryland, Missouri, or New York, (*see id.* at 26–27); (8) Plaintiffs failed to allege equitable claims because they did not allege

Court granted in part Defendant's motion to dismiss on July 10, 2024, (*see* ECF No. 47), Ms. Murphy and Mr. Uhl filed a Third Amended Class Action Complaint for Damages, (*see* ECF No. 48), and then the operative Fourth Amended Class Action Complaint for Damages, (*see* ECF No. 53 ("FACAC")), again alleging the same seven causes of action.

On August 28, 2024, Defendant moved both to dismiss the Fourth Amended Class Action Complaint,[2] (*see* ECF No. 58), and to compel remaining Plaintiffs Ms. Murphy and Mr. Uhl to arbitration. (*See* ECF No. 59.) To streamline this litigation, the Court stayed briefing on Defendant's motion to dismiss in favor of first resolving the issue of arbitrability. (*See* ECF No. 62.) After Plaintiffs filed their opposition to the motion to compel arbitration, (*see* ECF No. 64), Defendant determined that additional arbitration-related discovery was required. (*See* ECF No. 66.) Although "Plaintiffs believe[d] that Roblox should have sought all discovery relevant to the[ arbitration] issues before filing its initial motion to compel arbitration" and "should have moved to compel arbitration under all potentially applicable Terms of Use in its initial motion to compel arbitration," the Parties "agreed to targeted and limited discovery." (*See id.* at 2.) Defendant therefore withdrew its initial motion to compel arbitration. (*See generally id.*)

Over the next several months, the Parties engaged in their agreed-to arbitration-related discovery. (*See* ECF Nos. 67, 70, 76.) During this period, Ms. Murphy voluntarily dismissed her claims, (*see* ECF No. 74), leaving Mr. Uhl as the sole remaining named Plaintiff. Defendant filed the instant Motion on March 20, 2025. (*See generally* ECF No. 80.)

/ / /

---

that there was an inadequate remedy at law, (*see id.* at 27–28); (9) Plaintiffs failed to state a claim under the "unfair prong" of California's Unfair Competition Law, (*see* ECF No. 35 at 28); and (10) Plaintiffs failed to allege a cause of action under California's Consumer Legal Remedies Act because they could not allege a "good" or "service," (*see* ECF No. 35 at 28–29).

[2] Like its first motion to dismiss, Defendant's second motion to dismiss was exhaustive, seeking dismissal of Plaintiffs' claims on nearly all the same grounds as before except for the First Amendment and Rule 9(b) arguments. (*Compare* ECF No. 58, *with* ECF No. 35.)

## II. Factual Background[3]

### *A. Defendant's Roblox Platform and Robux*

Defendant "operates an online platform ("the Roblox Platform") that hosts a virtual universe where users can create virtual games and experiences, connect with other users to enjoy user-created games and user-created virtual experiences, and use virtual apparel and other content created by themselves and other users." (*See* ECF No. 83 ("Jit Decl.") ¶ 4.) "Robux is a virtual currency that can be used on the Roblox Platform to acquire virtual items and gain access to virtual experiences." (*Id.* ¶ 5.)

Robux can be purchased through either the Roblox website, (*see id.* ¶ 10), or the Roblox app. (*See id.* ¶ 13.) From May 2, 2018, through January 3, 2023, those purchasing Robux through the Roblox website encountered the following screen:




---

3 "[I]n deciding a motion to compel arbitration, [the court] may consider the pleadings, documents of uncontested validity, and affidavits submitted by either party." *Macias v. Excel Bldg. Servs. LLC*, 767 F. Supp. 2d 1002, 1007 (N.D. Cal. 2011).

(*See id.* ¶ 12.) Meanwhile, those purchasing Robux through the Roblox app encountered the following:




(*See id.* ¶ 14.) From February 24, 2021, to October 16, 2022, the disclosure through the Roblox app read: "[B]y purchasing Robux, you agree to our **Terms of Use** including the arbitration clause and to our **Privacy Policy**," with the phrase "Terms of Use" "hyperlinked to the then-current version of the Roblox Terms." (*See id.* ¶¶ 13–14 (emphasis in original).) "On October 17, 2022, the language of the disclosure was updated to what is reflected in the screenshot" above. (*See id.* ¶ 15.) "If the user had a payment method stored on their mobile device through either Apple Pay or Google Pay, once the user selected the desired Robux package, a pop-up window corresponding to the payment method appeared on the bottom of the same screen containing the disclosure[s] described" above. (*See id.* ¶ 16.) "To complete their purchase of Robux through the mobile app, users were required to provide affirmative consent for the charge by double clicking the side button to pay through Apple Pay or clicking 1-tap buy on Google Pay," as depicted below:

/ / /

/ / /

/ / /




*Apple*




*Android*

(*See id.*)

### B. *Plaintiff's and His Children's Interactions with the Roblox Platform*

Plaintiff Uhl was first introduced to the Roblox Platform by his twelve-year-old daughter. (*See* FACAC ¶ 78.) He has three children, whom he allowed to use the Roblox Platform beginning in approximately June 2017. (*See id.* ¶ 19.) "Mr. Uhl allowed all three of his children to continue playing the game because he believed that Roblox was a safe environment for his children after reading the 2017 version of Roblox's Terms of Use and Parent's Guide in viewing Roblox's own advertisements, as then found on their website, www.roblox.com." (*Id.*) "Specifically, Mr. Uhl researched the safety of the Roblox platform on or around June 1, 2017," (*id.* ¶ 79), at which time he visited Roblox's website, (*see id.*) and reviewed the Parents' Guide. (*See id.* ¶ 80.)

Although all three of Plaintiff's children apparently used the Roblox Platform, the Parties only introduce evidence related to one account used by his twelve-year-old daughter. According to Defendant's records, the one active username provided by Plaintiff "shows that this account was created on November 7, 2018," which Defendant calls the "Uhl Account." (*See* Jit Decl. ¶ 6.) It therefore appears possible that Plaintiff's child(ren)

may have had an additional account (or accounts) between June 2017, and November 7, 2018.

"At the time [Plaintiff's] child's account was created, it was done so with [his] permission, and [his] email address." (*See* Uhl Decl. (ECF No. 80-7 (public redacted version), ECF No. 82-1 (sealed version)) ¶ 2; *see also* Supp. Uhl Decl. (ECF No. 80-8 (public redacted version), ECF No. 82-2 (sealed version)) ¶ 2.) "To [his] knowledge, [Plaintiff] ha[s] never been emailed a copy of the Roblox Terms of Use, nor ha[s] [he] received any emailed notifications of updates made to the Roblox Terms of Use." (*See* Uhl Decl. ¶ 3.) "In addition, [his] child has never presented [him] with the Roblox Terms of Use, nor has she sought [his] permission to assent to the Roblox Terms of Use." (*See id.*)

Defendant's records show that between December 26, 2018, and July 12, 2024, more than 160 Robux purchases were made by the Uhl Account. (*See* Jit Decl. ¶ 8; *see also* Jit Ex. 1 (ECF No. 80-1 (public redacted version); ECF No. 82 (sealed version)).) In June 2022, however, Plaintiff "discovered inappropriate communications between [his] child and an adult posing as a young girl named 'Jessica.'" (*See* Uhl Decl. ¶ 12.) "It was at that time that [Plaintiff] revoked [his] permission for [his] child to access and play on the Roblox [P]latform." (*Id.*) He "deleted the Roblox application from each of the computer tablets, and [his] wife deleted the application from her mobile device at the time." (*Id.* ¶ 14.) "After revoking [his] permission for [his] child to access and play on the Roblox platform, [Plaintiff's] child has not accessed the Roblox platform or made any purchases of Roblox *with [his] knowledge*[,]" and Plaintiff has "not personally made any purchases or payments to Roblox, via the Apple AppStore or otherwise, since before the initiation of this litigation." (*See id.* ¶ 15 (emphasis in original).) Plaintiff therefore disclaims any knowledge of the last 35 purchases of Robux made by the Uhl Account between approximately June 14, 2022, and July 12, 2024, as well as three purchases made with a credit card occurring on December 20, 2020; January 14, 2021; and January 18, 2022. (*See id.* ¶¶ 15, 20, 23; Supp. Uhl Decl. ¶¶ 3 ("I dispute personally making transactions identified in lines 2–36 on [Jit Ex. 1]."), 7–9; *see also* Jit Ex. 1 at 2–4, 6.)

The remaining approximately 130 transactions occurred between December 26, 2018, and May 18, 2022, and the vast majority were made either through Defendant's website (Payment Method: XsollaCreditdebitcards) or through Defendant's app using Apple Pay (Payment Method: AppleAppStore). (*See* Jit Ex. 1 at 3–7.) Plaintiff's debit card information was "saved as the payment method on [his] child's Apple iPhone" and his "CashApp payment information was saved on the computer tablets and [his] wife's prior mobile device." (*See* Uhl Decl. ¶ 16.) Plaintiff's "child [wa]s given permission to make small purchases through the Apple AppStore from time to time." (*See id.*) "However, that permission [wa]s *not* extended to make purchases of Robux or other transactions related to Robux." (*Id.* (emphasis added).) That said, Plaintiff "do[es] not recall providing instructions to [his] child specifically related to purchases made on Roblox," although he "[g]enerally[] . . . ha[s] instructed [his] children to ask for [his] permission or [his] wife's permission prior to making any purchases online using [their] payment information." (*See id.* ¶ 17.) It is not clear whether Plaintiff ever gave his children permission to make the purchases logged between December 26, 2018, and May 18, 2022.

What is clear is that Plaintiff "would occasionally purchase gift cards for [his] children to use as gifts for birthdays and holidays." (*See* Supp. Uhl Decl. ¶ 4.) Indeed, "[t]he last purchase of Robux that [Plaintiff] can recall having personally made with knowledge was . . . sometime around June of 2022[,]" which was a "purchase . . . made with cash for a Robux gift card." (*See* Uhl Decl. ¶ 19.) Plaintiff "ha[s] never personally redeemed any gift card codes on the Roblox platform, and [he] dispute[s] having personally redeemed any of the gift card codes listed on [Jit Exhibit 1]." (*See* Supp. Uhl Decl. ¶ 4.)

### *C. Defendant's Terms of Use*

Defendant submits several iterations of its Terms of Use covering the period between August 8, 2017, through June 14, 2022. (*See* Jit Decl. ¶¶ 18–20; *see also* ECF Nos. 80-2 ("2017 Terms of Use" or "2017 TOU"), 80-3 ("2018 Terms of Use" or "2018 TOU")), 80-4 ("2022 Terms of Use" or "2022 TOU").) The 2017 Terms of Use were effective on August 8, 2017, (*see* Jit Decl. ¶ 18); the 2018 Terms of Use were effective on November 7,

2018, (*see id.* ¶ 19), when the Uhl Account was created, (*see id.* ¶ 17); and the 2022 Terms of Use were effective starting on April 6, 2022, through at least June 14, 2022, (*see id.* ¶ 20). It is undisputed that each version of the Terms of Use contains a separate provision regarding "Dispute Resolution, Arbitration and No Class Actions." (*See* 2017 TOU at 12–13, 2018 TOU at 14–15, 2022 TOU at 9–11.)

**LEGAL STANDARD**

The Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1–16, governs arbitration agreements in any contract affecting interstate commerce, including those found in employment contracts. *See Cir. City Stores, Inc. v. Adams*, 532 U.S. 105, 119, (2001); *see also* 9 U.S.C. § 2. The FAA "provides that 'an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Fli-Lo Falcon, LLC v. Amazon.com, Inc.*, 97 F.4th 1190, 1193 (9th Cir. 2024) (quoting *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011)).

Courts review arbitration agreements in light of the "liberal federal policy favoring arbitration agreements." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983); *Soto v. Am. Honda Motor Co.*, 946 F. Supp. 2d 949, 953–54 (N.D. Cal. 2012). "If a party ignores its agreement to arbitrate, the other party may ask a court to issue 'an order directing that such arbitration proceed in the manner provided for in such agreement.'" *Fli-Lo Falcon*, 97 F.4th 1190 at 1194 (quoting 9 U.S.C. § 4). Further, "[i]f an agreement exists, the FAA 'leaves no place for the exercise of discretion by a district court, but instead mandates that [it] shall direct the parties to proceed to arbitration.'" *Id.* at 1193 (quoting *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985)).

**ANALYSIS**

"Generally, in deciding whether to compel arbitration, a court must determine two 'gateway' issues: (1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute." *Brennan* 796 F.3d at 1130 (citing *Howsam*

*v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 84 (2002)). Defendant "bears the burden of showing each of these elements by a preponderance of the evidence." *See Hansen v. Rock Holdings, Inc.*, 434 F. Supp. 3d 818, 824 (E.D. Cal. 2020) (citing *BG Grp., PLC v. Rep. of Argentina*, 572 U.S. 25, 60 (2014); *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015); *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)), *rev'd on other grounds*, 1 F.4th 667 (9th Cir. 2021). "The district court, when considering a motion to compel arbitration [that] is opposed on the ground that no agreement to arbitrate had been made between the parties, should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*, 925 F.2d 1136, 1141 (9th Cir. 1991).

Plaintiff disputes only the first of the two "gateway" issues here, arguing both that there is no valid arbitration agreement, (*see* Opp'n at 12–24), and that Defendant waived its right to move to compel arbitration. (*See id.* at 7–12.) The Court addresses each of Plaintiff's arguments in turn.

## I. Agreement to Arbitrate

"In determining whether the parties have agreed to arbitrate a particular dispute, federal courts apply state-law principles of contract formation." *Berman v. Freedom Fin. Network, LLC*, 30 F.4th 849, 855 (9th Cir. 2022) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). "To form a contract under . . . California law, the parties must manifest their mutual assent to the terms of the agreement." *See id.* (citing *Specht v. Netscape Commc'ns Corp.*, 306 F.3d 17, 29 (2d Cir. 2002) (applying California law)).

"Parties traditionally manifest assent by written or spoken word, but they can also do so through conduct." *Id.* (citing *Specht*, 306 F.3d at 29). "However, '[t]he conduct of a party is not effective as a manifestation of his assent unless he intends to engage in the conduct and knows or has reason to know that the other party may infer from his conduct that he assents.'" *Id.* (alteration in original) (quoting Restatement (Second) of Contracts § 19(2) (1981)). "These elemental principles of contract formation apply with equal force

to contracts formed online." *Id.* at 855–56. "Thus, if a website offers contractual terms to those who use the site, and a user engages in conduct that manifests her acceptance of those terms, an enforceable agreement can be formed." *Id.* at 856.

Defendant contends that Plaintiff agreed to arbitrate his claims each time he purchased Robux through the Roblox website and the mobile application, (*see* Mot. at 11–15; *see also* Reply at 9 n.3), or by authorizing his child to make such purchases. (*See* Reply at 3–5.) Plaintiff counters that Roblox has not met its burden of establishing by a preponderance of the evidence that it was Plaintiff himself who made any of those purchases, (*see* Opp'n at 13), or that an agency relationship existed between Plaintiff and his child. (*See id.* at 13–15.) Upon review of the record in this case, the Court agrees with Plaintiff on both counts.

Defendant withdrew its initial motion to compel arbitration—which was filed over ten months after the case was removed from state court—so that the Parties could engage in "targeted discovery related to Plaintiffs' assent to Roblox's Terms and arbitration clause." (*See* ECF No. 84-2 ("Siko Decl. Ex. A") at 8.) Specifically, defense counsel provided Plaintiff's counsel "a list of questions we believe should be answered prior to filing our renewed motion to compel arbitration." (*See id.* at 2.) The second of these requests was "[a] list of all purchases identified on the payment spreadsheets associated with the relevant Roblox accounts that Plaintiffs dispute personally making," and the fourth "[a] description of the instructions Plaintiffs provided to their children with regard to Robux purchases prior to Plaintiffs' revocation of permission to purchase Robux and . . . when Plaintiffs revoked their permission for their children to purchase Robux." (*See id.*)

In his resultant declarations, Plaintiff specifies that he personally purchased Robux "sometime around June of 2022," "with cash for a Robux gift card," (*see* Uhl Decl. ¶ 19), and that, prior to June of 2022, he "would occasionally purchase gift cards for [his] children to use as gifts for birthdays and holidays." (*See* Supp. Uhl Decl. ¶ 4.) Plaintiff specifically disclaims having "personally" made a number of specific purchases, including "any purchases or payments to Roblox, via the Apple AppStore or otherwise, since before the

initiation of this litigation[,]" (*see* Uhl Decl. ¶ 15); the "transactions identified in lines 2–36 on the spreadsheet provided by Roblox's counsel bates numbered as ROBLOX_000000[0]1[,]" (*see* Supp. Uhl Decl. ¶ 3); "three transactions that were recorded on [Plaintiff's Wells Fargo] account history that occurred on December 4, 2023, November 21, 2023, and August 4, 2023[,]" (*see id.* ¶ 6); and transactions appearing in Plaintiff's "Cash-App transaction history . . . [that] occurred on October 6, 2023, July 12, 2023, January 29, 2023, October 29, 2022, October 11, 2022, October 7, 2022, September 21, 2022, September 18, 2022, September 2, 2022, August 27, 2022, and January 18, 2022[,]" (*see id.* ¶ 7). Plaintiff also disclaims having "knowledge" or a specific "rec[ollection]" of several additional transactions, including "transactions, purchases, or payments made to or from Defendant Roblox Corporation subsequent to the initiation of this litigation[,]" (*see* Uhl Decl. ¶ 20); "any purchases for Robux or other goods or services on the Roblox platform that were made with [Plaintiff's] debit/credit card on the dates July 12, 2024; September 8, 2023; December 10, 2023; December 3, 2023; November 20, 2023; or August 3, 2023[,]" (*see id.* ¶ 20); "any transaction with Roblox using" six specific credit or debit card numbers, (*see id.* ¶ 23; *see also* Supp. Uhl Decl. ¶¶ 8–9); and "purchasing any of the gift cards listed on the document provided by Roblox's counsel bates numbered as ROBLOX_00000001[,]" (*see id.* ¶ 4).

This leaves approximately 130 transactions that Plaintiff does not specifically disclaim knowledge of or attest to making personally. Based on its counsel's request for "[a] list of all purchases identified on the payment spreadsheets associated with the relevant Roblox accounts that Plaintiffs dispute personally making[,]" (*see* Siko Decl. Ex. A at 2), Defendant asks the Court to infer that Plaintiff personally made at least one of those 130 remaining transactions. As Defendant conceded at oral argument, however, the Court must view the evidence most favorably to Plaintiff and draw all reasonable inferences in his favor in resolving the instant Motion. (*See* ECF No. 94); *see also Three Valley Mun. Water Dist.*, 925 F.2d at 1141. While it is certainly possible that Plaintiff personally made one of the purchases at issue, the Court cannot conclude that it is more likely than not based on

the current record. Indeed, Plaintiff admits only to having personally purchased with cash gift cards that his children could redeem for Robux. (*See* Uhl Decl. ¶ 19; Supp. Uhl Decl. ¶ 4.) Ultimately, Defendant did not "come forward with evidence [that] would entitle it to a directed verdict if the evidence went uncontroverted at trial.'" *See C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (setting forth standard for party bearing burden of proof at summary judgment (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992))). Defendant therefore fails to establish by a preponderance of the evidence that Plaintiff assented to its Terms by purchasing Robux through the Roblox website or app.

Alternatively, Defendant argues that Plaintiff is "bound to the Terms because he expressly authorized his child's repeated purchases of Robux through a Roblox account associated with [his] email address and via payment methods Plaintiff controlled." (*See* Reply at 3 (citing Opp'n at 13; Uhl Decl. ¶¶ 2, 16, 18, 21; Supp. Uhl Decl. ¶¶ 6–7).) It is true that Plaintiff's debit card information "is saved as the payment method on [his] child's Apple iPhone" and his "CashApp payment information was saved on the computer tablets and [his] wife's prior mobile device," (*see* Uhl Decl. ¶ 16), which were the devices his child used to access the Roblox Platform. (*See id.* ¶ 7.) While Plaintiff's "child [wa]s given permission to make small purchases through the Apple AppStore from time to time[, h]owever, that permission [wa]s not extended to make purchases of Robux or any other transactions related to Roblox." (*See id.* ¶ 16.) Further, Plaintiff "do[es] not recall providing instructions to [his] child specifically related to purchases made on Roblox[,]" but, "[g]enerally, [he] ha[s] instructed [his] children to ask for [his] permission or [his] wife's permission prior to making any purchases online using [their] payment information." (*See id.* ¶ 17.)

/ / /

/ / /

/ / /

/ / /

There is no indication that Plaintiff ever provided such permission here,[4] (*see generally* Uhl Decl.; Supp. Uhl Decl.), as Defendant contends would be necessary to create an agency relationship. (*See* Reply at 4–5.) Further, the only case on which Defendant relies, *Heidbreder v. Epic Games, Inc.*, 438 F. Supp. 3d 591 (E.D.N.C. 2020), is inapposite because the parent-plaintiff in that case created the account that was linked to his debit card but to which he "then gave [his child] free rein over . . . for over a year." *See id.* at 595, 597–98. Here, by contrast, "[Plaintiff's] child's account was created . . . with [his] permission" and with his email address,[5] (*see* Uhl Decl. ¶ 2), but it is not clear that Plaintiff linked his card information to the account or gave his child his permission to use it. Defendant therefore also fails to establish that Plaintiff assented to its Terms by providing his permission for his child to purchase Robux through the Roblox website or app. Because Defendant fails to establish by a preponderance of the evidence that Plaintiff assented to its arbitration provision, the Court **DENIES** Defendant's Motion.

Nonetheless, the Court feels compelled to address Defendant's argument in its Reply that Plaintiff "resist[ed] producing documents or sitting for a deposition," (*see* Reply at 2), and Defendant's request that, "[t]o the extent the Court believes that there is a genuine

---

[4] Plaintiff's Opposition does indicate that, "in Mr. Uhl's declaration, he confirms that he did not personally make these purchases, but rather he authorized or otherwise gave permission for the purchases to be made," (*see* Opp'n at 13 (citing Uhl Decl. ¶¶ 20–21; Supp. Uhl Decl. ¶¶ 3–4, 6–9)), and Defendant cites to this "admission[]" in its Reply. (*See* Reply at 4.) As Defendant itself noted at the hearing, however, counsel's argument is not properly considered part of the record before the Court. Plaintiff's declarations make clear that, although his daughter had "permission to make small purchases through the Apple AppStore from time to time . . . , that permission [wa]s not extended to make purchases of Robux or any other transaction related to Roblox," (*see* Uhl Decl. ¶ 16), and that he "[g]enerally . . . ha[s] instructed [his] children to ask for [his] permission or [his] wife's permission prior to making any purchases online using [their] payment information," (*see id.* ¶ 17), which permission is not specifically addressed in either the January 8, 2025 Uhl Declaration or the February 5, 2025 Supplemental Uhl Declaration. (*See generally* Uhl Decl.; Supp. Uhl Decl.)

[5] To the extent Defendant argues that "Plaintiff's declarations strongly suggest that he created his child's Roblox account," (*see* Mot. at 15 (citing Uhl Decl. ¶¶ 1–2; Supp. Uhl Decl. ¶¶ 1–2), the declarations do not specify who created the account. While it is possible that Plaintiff created the account, it is equally possible that his child, the child's mother, another child, or some other person entirely created the account after obtaining Plaintiff's permission.

dispute of fact about Plaintiff's assent to Roblox's Terms," the Court issue "an order requiring full discovery on the issue" because "Plaintiff should not be rewarded for his stratagems." (*See id.* at 3 n.1.) Ultimately, Defendant requests too little, too late. First, where—as here—there is a question concerning "the making of the arbitration agreement," *see* 9 U.S.C. § 4, "[t]he FAA provides for discovery and a full trial in connection with a motion to compel arbitration." *See Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 726 (9th Cir. 1999). Although the Court appreciates the Parties' attempts to resolve their discovery issues without the involvement of the Court, the time for Defendant to seek the Court's intervention to obtain reasonable discovery to ascertain the extent of Plaintiff's assent to Defendant's Terms of Service was *before* filing its initial and instant motions. That Defendant failed to do so does not excuse its failure to carry its burden of proof, particularly given Defendant's delay in seeking to enforce its arbitration clause. *See infra* Section II. In short, both sides have staked their stratagems, and Defendant's wager that it had a "clear answer" regarding the pre-June 2022 purchases of Robux from the Uhl Account did not win the day.

Further, this is not an instance where there exists a genuine dispute as to the material facts, but rather an example of a failure of proof. Plaintiff's counsel conceded at the hearing that Plaintiff's declarations were less than clear—indeed, although Plaintiff's counsel claimed that they were "inartfully worded," one could also conclude that they are artfully vague. That the facts are ambiguous, however, does not mean that there is a dispute of material fact. The burden was not on Plaintiff to prove that he did not personally engage in any of the transactions but rather on Defendant—as the moving party and the party seeking to compel arbitration—timely to develop a sufficient factual record from which the Court could find, by a preponderance of the evidence, that Plaintiff had assented to Defendant's arbitration clause. Defendant failed to do so, and its Motion therefore fails.

## II. Waiver

Plaintiff also argues that, even if there were a valid agreement to arbitrate, Defendant has waived its right to compel Plaintiff to arbitration. (*See* Opp'n at 7–12.) "To establish

waiver under generally applicable contract law, the party opposing enforcement of a contractual agreement must prove by clear and convincing evidence that the waiving party knew of the contractual right and intentionally relinquished or abandoned it." *Quach v. Cal. Com. Club, Inc.*, 16 Cal. 5th 562, 584 (2024) (citing *Lynch v. Cal. Coastal Comm'n*, 3 Cal. 5th 470, 475 (2017); *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal. 4th 1, 31 (1995)).

Defendant contends that it did not know that Plaintiff's claims were arbitrable until August 16, 2024, when Plaintiff's counsel finally provided Defendant with the username of Plaintiff's minor child. (*See* Reply at 9 (citing ECF No. 59-7 ¶ 5).) But the Ninth Circuit "ha[s] never suggested that for waiver purposes, knowledge of an existing right to arbitrate requires a present ability to move to enforce an arbitration agreement." *See Hill v. Xerox Bus. Servs., LLC*, 59 F.4th 457, 469 (9th Cir. 2023) (citing *In re Cox Enterps., Inc. Set-top Cable Television Box Antitrust Litig.*, 790 F.3d 1112, 1119 (10th Cir. 2015)). Here, Defendant's main argument in support of its Motion is that "Plaintiff accepted Roblox's Terms and agreed to arbitrate his claims every time he purchased Robux." (*See* Mot. at 11.) From Plaintiff's first appearance in the case, he has alleged that he "is a . . . parent of three children who used the Roblox platform beginning in around 2017," and he "and his wife spent money on the Roblox platform on at least a monthly basis to pay for Robux." (*See* FAC ¶ 20.) Consequently, Defendant has had knowledge of its right to compel Plaintiff to arbitration since the date Plaintiff was added as a party to this case.[6]

As for the second element of the waiver analysis, the Ninth Circuit has articulated "no concrete test to determine whether a party has engaged in acts that are inconsistent

---

[6] And Defendant had knowledge that he could compel prior named Plaintiffs Ms. Murphy and Ms. Payan to arbitration from the outset of this case. (*See* Compl. ¶¶ 18 ("Plaintiff Katherine Murphy is a . . . parent of a child who used the Roblox platform beginning in January 2021[, who] . . . spent money on Robux on the Roblox platform for her son's benefit[.]", 19 ("Plaintiff Monique Payan is a . . . parent of a child who used the Roblox platform beginning in 2019[, who] . . . spent money on the Roblox platform, including paying for a recurring monthly charge for Robux, for her daughter's benefit[.]").) And, even if Defendant did require the username of Plaintiff's minor child[ren], that does not excuse Defendant's failure timely to exercise its right to compel reasonable arbitration-related discovery. *See supra* pages 14–15.

with its right to arbitrate." *See Martin v. Yasuda*, 829 F.3d 1118, 1125 (9th Cir. 2016). The Ninth Circuit has "stated, however, that a party's extended silence and delay in moving for arbitration may indicate a 'conscious decision to continue to seek judicial judgment on the merits of [the] arbitrable claims,' which would be inconsistent with a right to arbitrate." *Id.* (alteration in original) (quoting *Van Ness Townhouses v. Mar Indus. Corp.*, 862 F.2d 754, 759 (9th Cir. 1988)). The Ninth Circuit has found "this element satisfied when a party chooses to delay his right to compel arbitration by actively litigating his case to take advantage of being in federal court." *See id.* (first citing *Van Ness Townhouses*, 862 F.2d 756, 759; then citing *Kelly v. Pub. Util. Dist. No. 2*, 552 Fed. App'x 663, 664 (9th Cir. 2014); then citing *Plows v. Rockwell Collins, Inc.*, 812 F. Supp. 2d 1063, 1067–68 (C.D. Cal. 2011)). "A statement by a party that it has a right to arbitration in pleadings or motions is not enough to defeat a claim of waiver."[7] *Id.* (citing *In re Mirant Corp. v. Castex Energy, Inc.*, 613 F.3d 584, 591 (5th Cir. 2010); *Hooper v. Advance Am., Cash Advance Ctrs. of Miss., Inc.*, 589 F.3d 917, 923 (8th Cir. 2009)). "Additionally, although filing a motion to dismiss that does not address the merits of the case is not sufficient to constitute an inconsistent act, seeking a decision on the merits of an issue may satisfy this element." *Id.* at 1125–26 (collecting cases).

Here, Defendant moved to dismiss Plaintiffs' Second Amended Complaint on a variety of grounds, including that Plaintiffs' claims are barred by Section 230, on March 11, 2024. (*See generally* ECF No. 35.) Defendant did not seek to stay briefing on

---

[7] The Court therefore concludes that the following footnote in Defendant's initial motion to dismiss did not suffice to preserve its right to arbitration:

> Prior to filing this Motion, Roblox asked Plaintiffs to disclose their Roblox usernames so that Roblox could determine whether Plaintiffs were parties to an enforceable arbitration agreement. Plaintiffs refused to provide this information. If Roblox learns that Plaintiffs are, in fact, subject to an agreement to arbitrate, Roblox may move to compel this case to arbitration. Roblox therefore expressly reserves, and does not waive, its right to compel arbitration at a later point.

(*See id.* at 2 n.1 (citing *Newirth ex rel. Newirth v. Aegis Senior Cmtys., LLC*, 931 F.3d 935, 940 (9th Cir. 2019).)

the motion to dismiss pending resolution of the arbitrability issue, as it did pending a decision on Plaintiffs' motion for remand. (*See* ECF No. 19.) Instead, Defendant took advantage of the opportunity to litigate a "motion to dismiss on a key merits issue" that may have proven dispositive, namely, whether Plaintiffs' claims were barred by Section 230.[8] *See Martin*, 829 F.3d at 1126 (affirming district court's decision that the defendants had waived arbitration where they had "spent seventeen months litigating the case," which "included devoting 'considerable time and effort' to a joint stipulation structuring the litigation, filing a motion to dismiss on a key merits issue, entering into a protective order, answering discovery, and preparing for and conducting a deposition") (footnote omitted). Indeed, concurrently with the filing of its prior and withdrawn motion to compel arbitration, Defendant *again* sought to dismiss Plaintiff's operative Fourth Amended Class Action Complaint on the merits. (*See* ECF No. 58.) Had Defendant been serious about compelling this action to arbitration, it would have taken advantage of the statutory resources available to it that evidence "Congress' clear intent, in the Arbitration Act, to move the parties to an arbitrable dispute out of court and into arbitration as quickly and easily as possible." *See Moses H. Cone Mem'l Hosp.*, 460 U.S. at 22. Instead, Defendant has repeatedly sought to take advantage of this forum by asking this Court—over a protracted period of time—to dismiss this action. The Court therefore concludes that Defendant has waived its right to compel arbitration and **DENIES** Defendant's Motion on this second and independent basis.

/ / /

/ / /

---

[8] Although the Court declined to address the issue in ruling on Defendant's first motion to dismiss, (*see* ECF No. 47 at 12 & n.5), subsequent clarification from the Ninth Circuit would appear to foreclose Defendant's hopes of a speedy resolution on the merits. *See Est. of Bride ex rel. Bride v. Yolo Techs., Inc.*, 112 F.4th 1168, 1178–79 (9th Cir. 2024) (concluding that the plaintiff-users' misrepresentation claims based on the defendant-interactive computer service's promises to unmask and ban abusive users were not categorically prohibited by Section 230), *cert. denied*, No. 24-864, 2025 WL 889177 (U.S. Mar. 24, 2025).

## CONCLUSION

In light of the foregoing, the Court **DENIES** Defendant's Motion to compel Plaintiff Damien Uhl to arbitration. Defendant **SHALL RESPOND** to Plaintiff's Fourth Amended Class Action Complaint within thirty (30) days of the electronic docketing of this Order.

**IT IS SO ORDERED.**

Dated: July 9, 2025

Honorable Todd W. Robinson
United States District Judge